85h    27|
66 AD²574|

HENRY L. MANNING, Respondent, *v.* CORNELIUS L. WELLS, Appellant.

*Parent and child — parent liable for necessaries furnished his infant child by a stranger.*

The complaint in an action alleged in substance that defendant's infant son came to the plaintiff's home in a destitute condition and without physical ability to provide himself with the necessaries of life; that the plaintiff thereupon caused the defendant to be notified of the whereabouts of his son and of his destitute condition; that just prior to that time the defendant had refused longer to furnish his son with the necessaries of life; had denied him shelter under his roof; had abandoned and repudiated him as his son and refused longer to provide for him either in sickness or in health; that the plaintiff furnished the son with the necessaries of life, consisting of board, lodging and clothing, work and labor in repairing his clothes, and cared for him while he was ill at the plaintiff's house, and furnished him with money to return to the defendant; that the necessaries thus furnished to the son were reasonably worth a sum specified in the complaint; that prior to the commencement of the action the plaintiff demanded payment of the defendant for the necessaries thus furnished, and that payment was refused.

*Held*, upon the hearing of a demurrer to the complaint, that the law raised an implied promise on the part of the defendant to pay for the necessaries furnished his infant son, and that the complaint stated a good cause of action.

APPEAL by the defendant, Cornelius L. Wells, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Broome on the 3d day of July, 1894, upon the decision of the court rendered at the Broome Special Term overruling the defendant's demurrer to the complaint.

*John Z. Lott*, for the appellant.

*Millard & Stewart*, for the respondent.

MARTIN, J.:

The allegations of the complaint, briefly stated, are that L. B. Wells was the infant son of the defendant; that about June 1, 1893, the defendant's son came to the plaintiff's home "in a destitute condition and without the physical ability of providing himself with the necessaries of life;" that the plaintiff thereupon caused the defendant to be notified of the whereabouts of his son and of his destitute

condition; that just prior to that time the defendant had refused longer to furnish his son with the necessaries of life, had denied him shelter under his roof, had abandoned and repudiated him as his son, and refused longer to provide for him either in sickness or in health; that the plaintiff furnished the son with the necessaries of life, consisting of board, lodging, clothing, work and labor in repairing his clothes, and caring for him while he was ill at the plaintiff's house, and money to secure his return to the defendant, to the value of $125.51; that the necessaries thus furnished the son were reasonably worth that sum; that prior to the commencement of this action the plaintiff demanded payment of the defendant for the necessaries thus furnished, and that the same was not paid. The complaint was demurred to upon the ground that facts sufficient to constitute a cause of action were not stated therein.

The first question presented is, whether, upon the facts alleged, the law raises an implied promise on the part of the defendant to pay for the necessaries furnished to his infant son by the plaintiff. That it is the duty of parents to provide for the maintenance of their infant children is a principle of natural law, and the obligation to discharge this duty continues until the child is in a condition to provide for himself or becomes twenty-one years of age. The question, however, whether that duty is a legal one or only a moral duty, and whether it is sufficient to raise an implied promise upon the part of the parent to pay for necessaries furnished his child, are questions as to which there seems to be a conflict in the authorities, one class holding that independent of statute, a parent is not liable for necessaries furnished his infant child, while another class holds that a person furnishing such necessaries may recover of the parent therefor. The principle upon which the latter proceeds is that as a parent is under a natural obligation to furnish necessaries for his infant children, if he neglects that duty a person who supplies such necessaries is deemed to have conferred a benefit upon the delinquent parent for which the law raises an implied promise on his part to pay. If the latter doctrine is correct it would follow that the plaintiff's complaint is sufficient, as it shows a clear and palpable omission of duty in that respect on the part of the defendant. Without discussing in detail or attempting to harmonize the various opin-

ions that have been expressed upon this question, we are disposed to hold that upon the facts alleged in the complaint the law raised an implied promise on the part of the defendant to pay for the neces-saries furnished his infant son. This conclusion is sustained by the principle of the following authorities: *Van Valkinburgh* v. *Watson* (13 Johns. 480); *Forsyth* v. *Ganson* (5 Wend. 558); *Clinton* v. *Rowlana* (24 Barb. 634); *Cromwell* v. *Benjamin* (41 id. 558, 561); *Smith* v. *Church* (5 Hun, 109); *Parker* v. *Tillinghast* (19 Abb. N. C. 190).

The *Van Valkinburgh* case is directly in point. In that case the court said: " A parent is under a natural obligation to furnish neces-saries for his infant children, and if the parent neglect that duty, any other person who supplies such necessaries is deemed to have conferred a benefit on the delinquent parent, for which the law raises an implied promise to pay on the part of the parent." In the *Forsyth* case the court recognized the liability of a parent for neces-saries furnished his infant child, where the father improperly neglects or refuses to provide them.

This doctrine was also recognized in the *Clinton* and *Smith* cases, where it was held that to make a parent liable for purchases of a child a failure on the part of the parent to discharge the obligation to provide necessaries for the infant, and that the goods supplied were necessary, must be shown, thus at least inferentially holding that in case of such neglect the parent would be liable.

It was held in *Cromwell* v. *Benjamin* that the liability of a father to furnish necessaries for his minor and invalid children, who were members of his family and unable to support themselves by their labor, depended upon principles analogous to those which gov-ern the relation of husband and wife, and that as to the wife, if he did not provide for her support, he was legally liable for necessaries furnished to her by tradesmen, even though against his orders, and that he was also liable for necessaries furnished for his children.

In *Crane* v. *Baudouine* (55 N. Y. 256, 259), in discussing the ques-tion of the liability of a parent for necessaries furnished a daughter, FOLGER, J., said: " And were she a daughter for whom, by reason of her minority and dependence upon him, the defendant was under a natural obligation to provide necessaries, this fact would be strong, with others to be mentioned, to sustain an implication of a promise."

In the *Parker* case it was held that where a parent sent his boy away from home to attend school in a distant place, and failed to supply him with clothing suitable to the climate, and required by the boy's growth, he was liable to the person furnishing such necessaries. The doctrine of the *Van Valkinburgh* case was again recognized and approved in *Poock* v. *Miller* (1 Hilt. 108) and in *Henry* v. *Betts* (Id. 156). In *Furman* v. *Van Sise* (56 N. Y. 439), where this question incidentally arose, it was said by GROVER, J.: " That parents are bound to provide for and maintain their infant offspring, results from the law of nature, and is enforced upon both according to their ability." In *The Matter of Ryder* (11 Paige, 185, 188), in discussing this question, the chancellor said: " Or a stranger may furnish necessaries for the child, and recover of the parent compensation therefor, where there is a clear and palpable omission of duty, on the part of the parent, in supplying a minor child with necessaries."

While it may be that the doctrine of these cases is somewhat in conflict with the cases of which *Raymond* v. *Loyl* (10 Barb. 483) is an example, yet we are of the opinion that, in view of the fact that the plaintiff at once notified the defendant that his son was at the plaintiff's house in a destitute condition and without the physical ability to provide himself with the necessaries of life, as was alleged in the complaint and admitted by the demurrer, under all the cases it must be held that an implied promise on the part of the defendant to pay for the necessaries thus furnished arose. In such a case very slight evidence would be sufficient from which to infer such a promise by the parent. When we assume the facts as stated in the complaint, together with such reasonable and fair intendments as are to be implied from the allegations therein, we are satisfied that a cause of action is alleged, and that, upon the admission of those facts, the plaintiff would be entitled to recover the amount claimed. It follows that the judgment should be affirmed.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment affirmed, with costs, with leave to the defendant to answer upon the payment of the costs of the demurrer and of this appeal.