Horace B. Claflin et al., Appellants, *v.* Louis S. Lenheim, Respondent.

66  301
139  289

Where one has been been constituted and accredited as agent to carry on a business for another, his authority to bind his principal continues after actual revocation as to those who have been accustomed to deal with him as such agent, until notice of the revocation is brought home to them.

As to whether the doctrine of constructive notice is applicable to such a case, *quære.*

Dubious or equivocal circumstances will not be substituted for actual notice.

In action to recover for goods sold, it appeared, indisputably, that, prior to July, 1867, H., the brother of defendant, with authority to act for him, had carried on a store at M., in the name of defendant, and was in the habit of purchasing goods for the store from plaintiffs on defendant's credit, the bills therefor being rendered to and paid by him. In July, 1867, the store was partially destroyed by fire, and the agency of H. was terminated. Defendant carried on a store himself at G. B., purchasing goods therefor of plaintiffs, but, having some difficulty in settling with them the accounts of the store at M., after the fire, he suspended all dealings until October, 1869, when he again purchased goods for his store at G. B. In November and December, 1869, H., without authority, purchased goods in defendant's name, to go to M. in the same manner as before. Plaintiffs had notice of the fire, but the evidence was conflicting as to whether they had notice of the termination of the agency. The court submitted to the jury, among other things, the question whether, independent of notice, in fact, the circumstances were such as to put the plaintiffs upon inquiry; and charged, in substance, that if they were, although there was no actual notice of the revocation of the agency, plaintiffs were chargeable with constructive notice thereof, and could not recover. *Held,* error; that the facts bearing upon the question of constructive notice being undisputed, that question was one of law for the court, and, as matters of law, they were insufficient to put plaintiffs upon inquiry, or charge them with constructive notice.

*Claflin* v. *Lenheim* (5 Hun, 269) reversed.

(Argued April 19, 1876; decided June 6, 1876.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department affirming a judgment in favor of defendant, entered upon a verdict, and

denying a motion for a new trial. (Reported below, 5 Hun, 269.)

This action was brought to recover for merchandise alleged to have been sold by plaintiffs to defendant.

The facts pertinent to the questions discussed appear sufficiently in the opinion.

*A. J. Vanderpoel* for the appellants. The authority of defendant's agent continued as to plaintiffs until notice of revocation was brought home to them. (Story on Ag., § 470; 1 Chit. on Con. [11th. ed.], 279; *Hayard* v. *Treadwell,* 1 Str., 506; *Anon* v. *Harrison,* 12 Mod., 346; *Salte* v. *Field,* 5 T. R., 215; *Morgan* v. *Stell,* 5 Bin., 305; *Trueman* v. *Loder,* 11 A. & E., 589; *Lamothe* v. *St. L. M. R. and D. Co.,* 17 Miss., 204; *Beard* v. *Kirk,* 11 N. H., 398; Pars. on Con. [5th ed.], 70, 71; 2 Kent's Com., 644; *Mech. Bk.* v. *Livingston,* 33 Barb., 458; *Clapp* v. *Rogers,* 12 N. Y., 283; *Ketchum* v. *Clark,* 6 J. R., 144, 148; *Deering* v. *Flanders,* 49 N. H., 225, 228; *Barfoot* v. *Goodall,* 3 Camp., 147 *Hart* v. *Alexander,* 2 M. & W., 484.) Lapse of time is not notice in the absence of other circumstances. (*Morgan* v. *Stell,* 5 Bin., 305; ——— v. *Harrison,* 12 Mod., 346; *Charlton* v. *Earl of Durham,* L. R., 4 Ch., 433.) A vendor not having actual knowledge of the revocation of the power of an agent may rest on the omission to give notice, unless bad faith on his part is established. (Kerr on Fraud and Mistake, 238; *Jones* v. *Smith,* 1 Hare, 55; *West* v. *Reed,* 2 Ha., 249, 259; *Ware* v. *Ld. Egmont,* 4 DeG., M. & G., 460; *Wilson* v. *Small,* 6 Wal., 83; *Woodworth* v. *Paige,* 5 Ohio St., 70; *Briggs* v. *Taylor,* 28 Vt., 180; *Seybell* v. *Nat. Cur. Bk.,* 54 N. Y., 288.) What may or may not be sufficient to justify an inference of notice is a question of law. (*Birdsall* v. *Russell,* 29 N. Y., 220, 249; *Williamson* v. *Brown,* 15 id., 354; *Welch* v. *Sage,* 47 id., 143, 147.)

*A. G. Rice* for the respondents. The circumstances being such as would have put a prudent man, acting in good faith,

on inquiry, plaintiffs are chargeable with such notice as the inquiry would develope. (*Mer. Bk.* v. *State Bk.*, 10 Wal., 604, 670 ; *Whitehead* v. *Boulnois*, 1 J. & C., Exch., 303 ; *Williamson* v. *Brown*, 15 N. Y., 354 ; *Barfoot* v. *Goodall*, 3 Camp., 147 ; *Zoller* v. *Jovin*, 47 N. H., 324 ; 49 id., 225 ; 16 East, 169 ; 43 How., 201.) The rule in regard to notice is substantially the same in cases of partnership and of agency. (Story on Ag., §§ 470–473 ; Story on Bail., § 208 ; Story on Part., §§ 128–130, 160, 161, 335 ; 3 Kent's Com., 67 ; 2 Greenl. Ev., § 68, *a ;* Dunlap's Paley on Ag., 163, note 3.)

RAPALLO, J. The plaintiffs seek to recover in this action the price of certain merchandise which they allege that they sold and delivered to the defendant, through his brother H. S. Lenheim, as his agent.

To establish the agency, they proved that this brother of the defendant had, for several years prior to July, 1867, conducted the business of a store at Meadville, Pennsylvania, in the name of the defendant, and had been in the habit of purchasing goods for that store from the plaintiffs. These purchases were all made in the name and on the credit of the defendant, and the bills thereof were rendered to and paid by him.

The defendant concedes, in his testimony, that previous to a fire which took place in July, 1867, in the store at Meadville, his brother was authorized by him to make purchases and carry on that store in his, the defendant's name, but contends that *after* the fire he terminated such authority. The purchases for which this action was brought were made by the brother, for the Meadville store, in November and December, 1869, in the name of the defendant. The plaintiffs claim that they had no notice of the revocation of the agency, and sold on the credit of the defendant.

The last bill paid by the defendant for goods sold for the Meadville store, was for upwards of $8,000, and was paid in August, 1867. It was for goods sold before the fire. There

was a difficulty between the plaintiffs and the defendant about this bill. An action was brought upon it and an attachment issued against the property of the defendant, and he was required to pay the costs of these proceedings, which he did in August, 1867. The defendant had for several years previously carried on another store at Great Bend, Pennsylvania, and had been in the habit of purchasing goods from the plaintiffs for that store; but after this difficulty he suspended all his dealings with the plaintiffs until the month of October, 1869, when he resumed his business relations with them by the purchase of goods, personally, for the store at Great Bend. In the following months of November and December, 1869, the brother made the purchases now in controversy, in the name of the defendant, for the Meadville store.

The defendant gave evidence on the trial tending to show actual notice to the plaintiffs of the revocation of the agency, after the fire of July, 1867. It was conceded that the plaintiffs had notice of the burning of the store at Meadville, but the evidence of notice of the revocation of the agency was controverted.

The court submitted to the jury the question whether the plaintiffs had notice of the revocation, but charged that if the jury came to the conclusion "that the circumstances of the case were such, independently of the question of notice, that in fair dealing between man and man plaintiffs should have inquired by telegraph or by letter of the defendant at Great Bend whether he continued the Meadville store, and whether the brother continued to have authority to buy goods in his name, that will end the recovery in this case;" and, further, that if the jury came to the conclusion "that no notice in fact was given and that the circumstances were such as to put the plaintiffs fairly upon inquiry as to whether that business was continued by the defendant and the brother had authority to continue it by making these purchases, that ends the responsibility on the part of the defendant." Exceptions were duly taken to the portions of the charge above quoted.

It is a familiar principle of law that when one has consti-tuted and accredited another his agent to carry on a business, the authority of the agent to bind his principal continues, even after an actual revocation, until notice of the revocation is given; and, as to persons who have been accustomed to deal with such agent, until notice of the revocation is brought home to them. The case of such an agency is analogous to that of a partnership, and the notice of revocation of the agency is governed by the same rules as notice of the dissolu-tion of a partnership. As to persons who have been pre-viously in the habit of dealing with the firm, it is requisite that actual notice should be brought home to the creditor, or at least, that the credit should have been given under circumstances from which notice can be inferred. Where the circumstances are controverted, or where notice is sought to be inferred as a fact, from circumstances, the question is for the jury; they must determine, as a question of fact, whether the party claiming against the partnership or the principal, did have notice of the dissolution or revocation; and there being some evidence of the fact of notice, the court, in the present case, properly submitted to the jury this question of fact.

But the court submitted to the jury the further question whether, independently of the question of notice in fact, the circumstances were such as to put the plaintiffs on inquiry as to whether the authority of the agent continued, and charged them that if they were, the plaintiffs were charged with notice of the facts which the inquiry would have disclosed. In other words, the question was submitted to the jury whether, although the plaintiffs had no notice in fact, they had constructive notice of the revocation of the agency.

Assuming that the doctrine of constructive notice is appli-cable to cases of this description, what circumstances amount to constructive notice is a question of law. Where the facts are in dispute, a mixed question of law and fact is presented, and then of course the question is to be determined by the jury, under instructions by the court, as to the effect of the circumstances which they may find to have existed. But the

question whether circumstances which are undisputed, or are found by the jury, are sufficient to put a party on inquiry and thus charge him with constructive notice, is not for the jury but for the court.

In this case, throwing out of view the evidence bearing upon the question of actual notice, there was no controversy about the facts. These were, that the store at Meadville was burnt in July, 1867, and the plaintiffs knew of the fire; that the plaintiffs brought an action and issued an attachment against the defendant for the bill then due for goods furnished to the store at Meadville; that this claim and the costs of the proceedings were paid by the defendant in August, 1867, and the defendant thereafter suspended all dealings with the plaintiffs until October, 1869, when he resumed them, and that in November, 1869, the brother resumed his purchases for the Meadville store, from the plaintiffs, on credit, in the name of the defendant, and the plaintiffs gave him credit as the agent for the defendant. Whether these circumstances were sufficient to put the plaintiffs on inquiry, or in other words, whether they amounted to constructive notice of the fact which an inquiry would have disclosed, viz., the revocation of the agency, was a question of law, to be determined by the court, and it was error to submit it to the jury. (*Am. Linen Thread Co.* v. *Wortendyke*, 24 N. Y., 550; *Howe* v. *Thayer*, 17 Pick., 91.)

Constructive notice is a legal inference from established facts, and when the facts are not controverted the question is one for the court. Whether, under a conceded state of facts, the law will impute notice, is not a question for the jury. (*Birdsall* v. *Russell*, 29 N. Y., 220, 249.)

This error, however, would not be ground for reversing the judgment if it appeared that the court would have been justified in holding, as matter of law, that the circumstances were sufficient to put the plaintiffs on inquiry, and we must, therefore, examine that question.

The mere fact that the store at Meadville was burnt did not indicate that the defendant intended to discontinue business

there; and if business had been promptly resumed and purchases for that store renewed by the defendant's brother, there could have been no reason, in the absence of any notice from the defendant, to suppose that the agency had been discontinued. The principal feature in the case is the delay of two years and upwards between the fire and the resumption of purchases, by the defendant's brother, for the Meadville store. But, under the circumstances, this delay might well have been attributed by the plaintiffs to the difficulty between them and the defendant, in July and August, 1867, which resulted in the defendant suspending all dealings with the plaintiffs, notwithstanding that he continued his business at Great Bend. And when the defendant, in 1869, resumed his dealings with the plaintiffs, without giving them notice of any change in his business arrangements with his brother, at Meadville, the plaintiffs were warranted in believing that the suspension of the dealings of the brother was attributable to the same cause which had deterred the defendant himself from making purchases; and when, immediately after the defendant himself resumed dealings, the brother applied to make purchases as before, for the Meadville store, the plaintiffs would not, naturally, attribute the suspension of dealings for that store, in the meantime, to a revocation of the agency, nor suspect that the brother was committing a fraud. We must, in considering the portion of the charge excepted to, assume, as we have assumed, that no notice was given by the defendant to the plaintiffs that he had discontinued his business at Meadville or revoked the authority of his brother, and that the plaintiffs knew nothing of it, for the charge expressly submits the question of constructive notice, independently of the question of notice in fact, and expressly states that the jury are to pass upon it in case they find that there was no notice in fact.

We think that the circumstances existing at the time of the sale of the goods in question were not sufficient to constitute constructive notice of the revocation of the agency, and that the case should have been submitted to the jury only upon the question of notice in fact. In this there is no hardship

upon the defendant; it was his duty, after he had accredited his brother for a series of years as authorized to deal in his name and on his responsibility, when he terminated that authority, to notify all parties who had been in the habit of dealing with his agent, as the plaintiffs had been to his knowledge. This was an act easily performed and would have been a perfect protection to him and prevented the plaintiffs from being deceived. Justice to parties dealing with agents requires that the rule requiring notice in such cases should not be departed from on slight grounds, or dubious or equivocal circumstances substituted in place of notice. If notice was not in fact given, and loss happens to the defendant, it is attributable to his neglect of a most usual and necessary precaution.

The jury may have been satisfied that notice was given, but under the charge they may have rendered their verdict solely on the ground of constructive notice; the judgment must, therefore, be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.