| 52 | 217 |
| 54 | 43 |

WALTER D. HOLT, AS ASSIGNEE OF HIRAM J. D. MINER, RESPONDENT, v. BERTIE ALLENBRAND AND OTHERS, CREDITORS OF HIRAM J. D. MINER, RESPONDENTS, IMPLEADED WITH EDWIN ISHAM AND GEORGE P. ISHAM, AS ASSIGNEE OF EDWIN ISHAM, APPELLANTS.

*Notice of the retirement of a member of a firm—the sufficiency of it is a question of law.*

It is not necessary, in order to charge a customer with a notice of the retirement of a member of a firm with which he has been accustomed to deal, that the notice of the fact should be positive and explicit. It is enough if it be such as to put him on inquiry, that is, sufficient to suggest to a reasonably prudent man that it is the part of prudence to inquire whether the fact be so.

This notice may be given by a change in the firm name, if the change is such as, of itself, to indicate the fact with notice of which the customer is sought to be charged.

Each case of this kind must stand on its own facts; and when the facts are ascertained the question of the sufficiency of the notice is a question of law.

The facts in this case held to be sufficient to put customers of a banking firm upon
inquiry as to whether a member of the firm had retired, and to affect them with
notice of the fact which such inquiry would have elicited.

APPEAL by the defendants Edwin Isham and George P. Isham, as assignee for the benefit of the creditors of Edwin Isham, from a judgment entered in this action, in the office of the clerk of Chautauqua county on July 16, 1888, upon the report of a referee.

*C. D. Murray*, for defendants, appellants.

*Stearns & Kinsley*, for defendants, respondent.

DWIGHT, J.:

The plaintiff is the assignee, for the benefit of creditors, of one Hiram J. D. Miner. The assignment preferred three classes of creditors, two of which have been paid, and the controversy in this case arises upon the distribution of the residue of the estate among parties entitled thereto under the third preference of the assignment.

On this appeal the question is, by consent of all parties, narrowed to the inquiry: For what debts of the plaintiff's assignor is the estate of the defendant Edwin Isham (assigned to the defendant George P. Isham) also liable? The data of the problem are the following facts: About the year 1861, Hiram J. Miner and others, including Hiram J. D. Miner and Edwin Isham, formed a copartnership in the business of banking, at Dunkirk, under the firm name of H. J. Miner & Co., which copartnership continued down to the death of Hiram J. Miner, in 1872. The business was continued, under the same firm name, at first by all the surviving partners and afterwards by remaining partners (one after another having withdrawn) until February 2, 1884. From June 14, 1880, to February 2, 1884, the firm consisted of Hiram J. D. Miner, the plaintiff's assignor, and the defendant Edwin Isham. At the last-mentioned date Isham sold his interest in the business to Miner, and the latter assumed all the liabilities of the firm. Hiram J. D. Miner continued the business down to May 2, 1885, when he made his assignment to the plaintiff. From the first organization of the firm (in 1861) the business was conducted in the same banking office. The sign over the principal entrance was "H. J. Miner & Co.'s Bank," until the withdrawal of Isham from the firm, when it was changed

to " Miner's Exchange Office." The certificates of deposit issued by the several firms before June 14, 1880, were headed in displayed type " H. J. Miner & Company's Bank." June 14, 1880, a new form of certificate was adopted, printed on paper of different shape and texture, in different type, and headed in large " script " characters " H. J. Miner & Company, Bankers," and immediately under that heading the words, in plain type, " Remaining partners, E. Isham, H. J. D. Miner." This certificate is known in the case as " Form A." From March 2, 1884, to March 17, 1884, Miner made use of a certificate the same in all respects as the last, except that the letter " S," at the end of the word " partners," and the name of " E. Isham," were plainly erased in red ink, so that the unerased portion of the heading read : " H. J. Miner & Company, Bankers; remaining partner, H. J. D. Miner." This certificate is known as " Form B." After March 16, 1884, Miner changed the heading of the certificate to read " Miner's Exchange Office, H. J. D. Miner, Prest." This certificate is known as " Form C."

All the certificates from 1861 were numbered in a continuous series till March 17, 1884, when Miner began numbering a new series with No. 1, and continued it to the date of the assignment. The persons employed in the banking office were the same before and after the withdrawal of Isham from the business. Isham was never personally employed in the business of the office. No notice of his withdrawal from the firm was given to the public or to persons dealing with the office, other than by the changes in the sign and in the certificates of deposit, as above described. The question was of the sufficiency of such notice to discharge Isham from liability to customers of the office. The referee held that the certificate (Form B) in which the name of Isham was erased, was a sufficient notice to all persons receiving it of his withdrawal from the firm, and that he was discharged from liability on all such certificates and for all subsequent deposits made by persons who had received that notice; also, that he was not liable to depositors, subsequent to his withdrawal, who had not been customers of the office for a long time, or never, prior thereto. But he held, in effect, that, as to all persons who had been customers of the firm down to or within a short time before the withdrawal of Isham, and who made deposits in the same banking office after that time, the certifi-

cate (Form C) issued on or after the seventeenth of March, together with the change of sign made on the second day of February, did not constitute notice of such withdrawal nor put them upon inquiry as to a change in the firm, and, accordingly, that as to such persons, who had no other notice of the change, the estate of Isham was liable on such certificates; and this is the particular conclusion which is questioned on this appeal.

In this particular we are inclined to think the learned referee was in error. It is not necessary, in order to charge a customer with notice of the retirement of a member of a firm with which he has been accustomed to deal, that the notice of the fact should be positive or explicit. It is enough if it be such as to put him upon inquiry; that is, sufficient to suggest to a reasonably prudent man that it is the part of prudence to inquire whether the fact is so. (*Lovejoy* v. *Spafford*, 93 U. S., 430; *Claflin* v. *Lenheim*, 66 N. Y., 306.) This notice may be given by a change in the firm name, the only requirement being that the change should be such as, of itself, to indicate the fact with notice of which the customer is sought to be charged. (*American Linen Thread Co.* v. *Wortendyke*, 24 N. Y., 550; *Howe* v. *Thayer*, 17 Pick., 91; *Kirby* v. *Hewitt*, 26 Barb., 607; *Barfoot* v. *Goodall*, 3 Camp., 147.) In the two latter of these cases notice by change of name was held to be sufficient, and in the two former not sufficient, to relieve the retiring partner from liability. Thus, in the Wortendyke case, the earlier firm name was "Wortendyke Bros." On the retirement of one of *three* Wortendykes and the admission of one Hoffman, the name was changed to "Wortendyke Bros. & Co." It was plain that this change did not even suggest the withdrawal of a Wortendyke, but only the addition of somebody else, and accordingly the retiring partner was held not discharged from liability. So in *Howe* v. *Thayer*, where the business had been conducted under several different styles, in neither of which did the name of the retiring partner appear, it was held that a change from Colton & Fellows to Newton & Fellows had no tendency to disclose the fact that the defendant *Thayer* had retired from the firm. Whereas, in the case of *Barfoot* v. *Goodall*, where the plaintiff's testator had been accustomed to draw by checks furnished him by the firm, in the address of which the name of Fisher appeared as a partner, and was afterwards furnished with checks

in which his name was omitted, Lord ELLENBOROUGH said it became him to inquire, before using these, what change had really taken place; and, he added, " when he did continue to use them, I must presume that he was perfectly well aware that Fisher had retired and that he continued to deal with the house upon the credit of the other partners." Of course, every case of this kind must stand on its own facts; and, it is to be observed, that when the facts are ascertained the question of the sufficiency of notice is a question of law. (See the cases above cited.)

Let us see, then, what are the facts of this case which bear upon the precise question of the sufficiency of notice of the retirement of E. Isham from the firm composed of himself and H. J. D. Miner. During the four years of their continuance of the business as the only remaining partners of H. J. Miner & Co., bankers, they had kept the old sign over the door, " H. J. Miner & Co.'s Bank," and had issued to their customers, including all the respondents in this case, certificates of deposit headed " H. J. Miner & Company, Bankers; remaining partners, E. Isham, H. J. D. Miner." It is to be assumed that it was from this certificate alone that the customers in question derived their information that Isham was a partner in the business. He retired on the 2d of March, 1884, and that was the end, in fact, of the old firm of H. J. Miner & Co. Thenceforward the business was carried on by H. J. D. Miner individually. The question is, are the respondents chargeable with notice of this important change? Immediately the old sign was taken down and in its place was erected one bearing the inscription " Miner's Exchange Office." Both signs were large and prominently displayed, and the change was one likely to attract attention. There was some significance in this change alone. The old sign indicated the business of a copartnership, the new one that of an individual. At the same time a change was made in the certificates of deposit issued, which the referee held was, of itself, sufficient notice to all who received them, but did not affect the respondents with notice, because none were issued to them. The first certificates received by them after the change bore the heading " Miner's Exchange Office, H. J. D. Miner, President." As to the respondents, then, the change in the certificate corresponded to the change of sign, but it went further. It seems to us that it gave unmistakable indication, not only that the

partnership with which the respondents had formerly done business had ceased to exist, but that there was no longer any copartnership engaged in the business. "Miner's Exchange Office" was not an appropriate designation for a copartnership, and the addition, "H. J. D. Miner, President," was entirely foreign to such a designation. Strictly, it indicated that the business was being done by an incorporated company or a joint-stock association. Certainly it indicated a notable change in the organization and conduct of the business. The name of Isham which had appeared upon all the certificates formerly issued to the respondents, as that of a partner, was no longer there ; the only name the new heading bore was that of Miner, and he was described as president of some organization under the new name of "Miner's Exchange Office." It seems to us reasonably clear that if this change was not a positive indication that Isham was no longer a partner in the concern, it was, at least, sufficient to put the respondents upon inquiry as to whether he was or not, and thus to affect them with notice of the fact, which inquiry would have elicited.

If these views are correct, the judgment must be reversed and a new trial granted.

BARKER, P. J., and ADAMS, J., concurred.

Judgment reversed and a new trial granted before another referee, with costs to abide the final award of costs.